NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | Criminal Action No. 2:95-cr-00070-JLL |
| v. | OPINION |
| OMAR TORRES-MONTALVO, | |
| Defendant | |

**LINARES,** District Judge.

This matter comes before the Court on Defendant's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582 and U.S.S.C. Retroactive Amendment 782 ("Def.'s Motion") (ECF No. 41). For the reasons set forth below, Defendants' Motion for Sentence Reduction is **Granted**.

### I. PROCEDURAL HISTORY

On August 1, 1995, Omar Torres-Montalvo (hereinafter Defendant) was convicted after a jury trial of Conspiracy to Kidnap, in violation of 18 U.S.C. § 1201(c), two counts of Kidnapping, in violation of 18 U.S.C. § 1201(a)(1), and Conspiracy to Distribute 30 Kilograms of Cocaine. Def.'s Motion at 1. Defendant's offense level under the United States Sentencing Guidelines (U.S.S.G.) was 43, and on February 16, 1996, Defendant was sentenced to a term of life imprisonment. *Id.* at 1, 3. Defendant has pursued a number of avenues of legal recourse since his incarceration without success, including an Interlocutory Appeal (ECF No. 15), and a Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3852(c)(2) (ECF No. 22). On November 1, 2014, Amendment 782 to the U.S.S.G. was enacted, reducing the offense levels

assigned to most drug quantities under U.S.S.G. § 2D1.1(c) by two levels. *Id.* at 2. Amendment 782 lowers Defendant's offense level to 42 and his sentencing range to 360 months to life imprisonment. *Id.* at 3. Based on the new sentencing range, Defendant asks for his sentence to be reduced to 360 months imprisonment. *Id.* at 6-7.

## II.  STATEMENT OF FACTS

Defendant was the ringleader of a large-scale drug conspiracy distributing cocaine from Colombia to New York by way of Texas. Memorandum of the United States of America in Opposition to Defendant's Motion for a Sentence Reduction Pursuant to Amendment 782 to the United States Sentencing Guidelines ("Govt.'s Memo") (ECF No. 42), at 2. In late 1994, after a shipment of 14 kilograms of cocaine was lost due to a police stop, Defendant arranged another sale in Texas. *Id.* Defendant went to Texas to sell 30 kilograms of cocaine to Fanol Ochoa and Efrain Avendano. *Id.* at 2-3. On December 12, 1994, Defendant met with Avendano, Ochoa, and a third associate, "Baldie," and gave them thirty packages of cocaine. *Id.* at 3. Ochoa and Baldie left with the cocaine, and Avendano went with Defendant to retrieve the money, but Ochoa and Baldie fled without paying. *Id.* Defendant kidnapped Avendano and held him as collateral for the cocaine. *Id.* Defendant was unable to find Ochoa or obtain payment for the cocaine in Texas, and on December 26, 1994, Defendant and his co-conspirators drove to New Jersey with Avendano as their hostage to continue searching for Ochoa. *Id.* When they arrived in New Jersey, Defendant and his co-conspirators went to Avendano's apartment and held Avendano, his wife, and their four children hostage from December 28, 1994 – December 31, 1994. *Id.* Defendant threatened the Avendano family and their relatives in Colombia, and directed his men to take either Avendano or his wife to search for Ochoa. *Id.* at 4. On December 31, 1994, Defendant and his men left New Jersey, bringing Avendano with them, and went to a

2

safe-house in Maryland. *Id.* Defendant told Avendano that he was facing increasing pressure to come up with the missing money, and threatened to kill Avendano and his family. *Id.* One of Defendant's co-conspirators even held a gun to Avendano's head and asked Defendant if he should shoot Avendano. *Id.* Shortly after these events, Avendano escaped from the safe-house and was able to alert the authorities. *Id.* at 4-5. A SWAT team eventually raided the location and Defendant and his co-conspirators were arrested. *Id.* at 5.

### III. LEGAL STANDARD

Amendment 782 to the U.S.S.G. "reduces by two levels the offense levels assigned to the quantities that trigger the statutory mandatory minimum penalties." U.S. Sentencing Guidelines Manual Amendment 782 (U.S. Sentencing Comm'n 2014). The amendment was passed to reflect the Sentencing Commission's finding that "setting the base offense levels slightly above the mandatory minimum penalties is no longer necessary to achieve its stated purpose," and "was also motivated by the significant overcapacity and costs of the Federal Bureau of Prisons," as the amendment is expected to help alleviate prison crowding issues. *Id.* A defendant is eligible for a sentence reduction under Amendment 782 if their previously calculated guideline range is lowered by a reduction of their offense level and they were not sentenced at or below the bottom of the now-amended guidelines range before. *Id.* When a defendant is eligible for a sentence reduction pursuant to Amendment 782, "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2) (2012). Section 1B1.10 is the Guidelines policy statement which implements 18 U.S.C. § 3582(c)(2), and the commentary accompanying the policy statement directs the court to consider the following factors when a sentence reduction is requested: (i) the

3

factors set forth in 18 U.S.C. § 3553(a); (ii) public safety considerations; and (iii) post-sentencing conduct. U.S. Sentencing Guidelines Manual § 1B1.10 cmt. 1B(i)-(iii) (U.S. Sentencing Comm'n 2014). Section 3553(a) states that the court "shall impose a sentence sufficient, but not greater than necessary . . ." and directs the court to consider the following factors in tailoring an appropriate sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;
(4) the need for the sentence imposed to protect the public from further crimes of the defendant;
(5) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(6) the kinds of sentences available;
(7) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
(8) any pertinent policy statement;
(9) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(10) the need to provide restitution to any victims of the offense.

### IV. ANALYSIS

It should be noted from the outset that the Government agrees that Defendant is eligible for a sentence reduction under Amendment 782. Govt.'s Memo at 15. Defendant's offense level under the new calculations is 42 and his new sentencing range is 360 months – Life. The critical issue, then, is whether a reduction in Defendant's sentence is warranted based on an analysis of the factors set forth in section 1B1.10: the section 3553(a) factors, public safety considerations, and Defendant's post-sentencing conduct.

Defendant first asserts that the nature and circumstances of his offense warrant a reduction in his sentence because the kidnapping victim was directly involved in the illegal activity that led to

his kidnapping. Def.'s Motion at 9. Defendant also argues that his history and characteristics warrant a reduction in his sentence. *Id.* at 10. Defendant was in his 20s when he was sentenced, but is now 49 and a grandfather. *Id.* at 11. While in prison, Defendant has earned his GED, become proficient in English, completed a Drug Education Program, taken typing and parenting classes, assisted other inmates, and is currently enrolled in Alcoholics Anonymous. *Id.* Defendant believes the above information demonstrates that he has matured and changed during his time in prison and that his post-sentencing conduct warrants a reduction in his sentence.

Defendant next asserts that the seriousness and deterrence section 3553(a) factors warrant a sentence reduction here. *Id.* at 12. He states that his reduced sentence would still reflect the seriousness of the offense as his requested reduction is modest and he will still have many years left to serve even if the motion is granted. *Id.* Defendant claims he has a very low likelihood of recidivism based on his reform in prison and research which shows that recidivism rates decline as age increases. *Id.* Defendant is also subject to an immigration detainer, and if he is released from prison he will immediately be transferred to Immigration and Customs Enforcement Custody. *Id.* at 13.

Finally, Defendant argues that his sentence should be reduced because he has assisted the government in thwarting the importation of large amounts of cocaine into the U.S. on multiple occasions. *Id.* at 14. He has previously petitioned the Government to reduce his sentence based on his assistance, but was unsuccessful. *Id.* at 15.

The Government does not contest Defendant' eligibility for relief under Amendment 782, but it does oppose any reduction. Govt.'s Memo at 15. The Government opposes a sentence reduction for Defendant because of the egregious conduct that led to his conviction, his pre- and post-sentencing history, and an issue concerning his identity. *Id.* at 18.

With respect to Defendant's criminal acts, the Government contends that the seriousness of his offenses cannot be understated as he was not a small-time dealer but the leader of a massive cocaine distribution ring that resorted to kidnapping and death threats. *Id.* at 19. The Government downplays the importance of the fact that Avendano was involved in illegal activity which led to his kidnapping, as they believe the sentencing judge already took that factor into consideration. *Id.* The Government further stresses that Defendant and his associates not only kept Avendano hostage for close to a month, but that they also took Avendano's wife and four children hostage for three days and threatened to kill them and their family in Colombia. *Id.* at 19-20.

The Government also takes issue with Defendant's assertion that he has been rehabilitated in prison and is a different man. The Government highlights a number of disciplinary infractions on Defendant's record, some of which are fairly recent:

- On August 7, 2013, Defendant was disciplined for fighting with another person, resulting in 90 days' loss of commissary privileges, 90 days loss of telephone privileges, and a suspended sentence of 30 days' disciplinary segregation.
- On July 31, 2013, Defendant was disciplined for possessing an unauthorized item; the penalty imposed was 30 days' loss of telephone.
- On August 25, 2005, Defendant was disciplined for threatening bodily harm. As a result, he was placed in disciplinary segregation for 15 days and lost telephone and visiting privileges for 60 days.
- On June 18, 2003, Defendant was disciplined for lying or falsifying statement and possessing an unauthorized item; he lost telephone and commissary privileges for 45 days.

*Id.* at 8-9. The government believes these events show that old age and time have not changed Defendant so as to reduce the risk of danger he poses to the community. *Id.* at 20.

The Government also does not find merit in Defendant's claim that he has provided useful assistance to the DEA and that his cooperation should lead to a reduction in his sentence. *Id.* at 22. The Government states that Defendant's cooperation has already been considered

6

through the proper channels as Defendant previously filed a Rule 35 Motion for a Reduction of Sentence based on his help to the DEA, and that motion was denied. *Id.* at 23. The Government characterizes Defendant's attempt to have his sentence reduced based on his cooperation as a "second-bite at the apple." *Id.*

Finally, there is a dispute over Defendant's identity and the Government argues that his refusal to cooperate in resolving this issue is telling. *Id.* at 10. The Government states that it does not know Defendant's true identity. *Id.* INS records show that his real name is Ruben Alfonso Tascon Caicedo and he was born in Colombia in 1966. *Id.* at 11. When Defendant was arrested in Louisiana in 1987 he said his name was Omar Torres-Montalvo and he was born in Puerto Rico in 1964. *Id.* An investigation into Defendant's true identity was not fruitful as he has an ex-wife who stated his true name is not Torres-Montalvo and she believes he is from Colombia, and a common law wife who knows him as Omar Torres-Montalvo from Puerto Rico. *Id.* The Government believes that Defendant's obstruction in refusing to provide his true identity weighs against a sentence reduction. *Id.* at 20. The Government asserts that the above evidence shows Defendant is still a dangerous man and therefore his sentence should not be reduced as he poses a threat to the community. *Id.* at 23.

Both parties present sound arguments in their submissions to the court. Defendant has been relatively well-behaved during his 20 years in prison, has earned a transfer from a maximum-security prison to a medium-security facility, and appears to have taken positive steps to better himself by utilizing the educational and drug-treatment opportunities available to him. On the other hand, Defendant has had some disciplinary issues throughout his imprisonment, with a fighting infraction occurring as recently as 2013. Defendant's kidnapping victim was involved in illegal drug activity which led to his captivity, but Defendant also kidnapped and

7

endangered the victim's wife and family for a short period of time. Defendant has provided some assistance to the DEA, but the assistance has been reviewed through the proper channels and was not found to merit a sentence reduction on its own. Defendant has provided the Government with his birth certificate and information about his identity, but the Government has struggled to verify Defendant's true name, birth date, and nationality. Overall, Defendant has set forth credible evidence to show he is trying to reform himself and leave behind his criminal past, yet the Government has also provided solid arguments as to why it feels Defendant is still a danger to the community and should not have his sentence reduced.

Given the rather even balance of the Parties' arguments and evidence, the policies behind the amendment and statutes at issue in this case must guide the Court here. As stated above, Amendment 782 was passed with the recognition that "setting the base offense levels slightly above the mandatory minimum penalties is no longer necessary to achieve its stated purpose," but also because it "would be an appropriate step toward alleviating the overcapacity of the federal prisons." U.S. Sentencing Guidelines Manual Amendment 782 (U.S. Sentencing Comm'n 2014). Section 1B1.10 directs the Court to impose a sentence based on public safety considerations, post-sentencing conduct, and the factors in § 3553(a). U.S. Sentencing Guidelines Manual § 1B1.10 cmt. 1B(i)-(iii) (U.S. Sentencing Comm'n 2014). A proper sentence is to be "sufficient, but not greater than necessary," to achieve the stated goals of deterrence, justice, and rehabilitation. 18 U.S.C. § 3553(a) (2012).

With these policies in mind, the Court finds that a sentence reduction for Defendant is proper here, though it denies Defendant's request for a 360 month sentence. The Court finds that a new sentence of 600 months best serves the policy goals underlying Amendment 782 and the related statutes. This new sentence creates the possibility of Defendant eventually leaving prison thus

helping to alleviate overcrowding, it is sufficient but not greater than necessary to punish Defendant for his deplorable crimes and reflects the seriousness of his offenses, and it protects the community from further danger from the Defendant as he will be approaching 80 at the time of his release. At the same time, this sentence recognizes the reforms Defendant has made while in prison and incentivizes him to continue on his path to rehabilitation, with the hope that he will one day be able to walk outside of prison walls again if he continues to behave. The Government cites to a number of cases to show that the Court can deny a sentence reduction request where amendments have lowered the sentencing ranges (*see United States v. Wilson,* 716 F.3d 50, 53 (2d Cir. 2013), *United States v. Stevenson,* 332 F. App'x 261 (6th Cir. 2009), etc.), but most of those cases denied a reduction based on lengthy records of disciplinary infractions, and the Government also acknowledges that the Court has the discretion to grant less of a reduction than the guideline permits. Def.'s Memo at 17-18. Pursuant to Amendment 782, the order reducing Defendant's sentence does not become effective until November 1, 2015, so as to allow the Bureau of Prisons to process the order, recalculate Defendant's sentence, and begin reentry planning.

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion for Sentence Reduction is **Granted**. Defendant's Sentence is reduced from Life to 600 months, effective November 1, 2015. An appropriate Order Accompanies this Opinion.

DATED: July 27, 2015

s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE

9